# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs November 17, 2015

## TRAVIS KINTE ECHOLS v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Knox County
### No. 102419    Bobby R. McGee, Judge

_____

### No. E2015-00601-CCA-R3-PC – Filed January 15, 2016
_____

Petitioner, Travis Kinte Echols, was convicted of felony murder perpetrated during the commission of a robbery and was sentenced to life in prison. Following an unsuccessful direct appeal, he petitioned for post-conviction relief from his conviction. The post-conviction court denied relief, and this appeal follows. Petitioner seeks review of four issues: (1) whether trial counsel was ineffective for failure to contemporaneously object to the introduction of character evidence pertaining to the victim; (2) whether the State violated the tenets of *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding a witness statement; (3) whether the trial court erred by precluding trial counsel from questioning the primary investigator with regard to the polygraph results of a witness; and (4) whether the trial court erred by sequestering petitioner's private investigator. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROBERT H. MONTGOMERY, JR., JJ., joined.

Joseph Liddell Kirk, Knoxville, Tennessee, for the Appellant, Travis Kinte Echols.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Charme P. Allen, District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## I. Facts

## A. Trial

After being found guilty of felony murder and sentenced to life in prison, petitioner appealed his conviction to this court. We affirmed the conviction, *State v. Travis Kinte Echols*, No. E2009-01697-CCA-R3-CD, 2011 WL 2418737 (Tenn. Crim. App. June 14, 2011), and after granting petitioner permission to appeal, our supreme court also affirmed the conviction, *State v. Echols*, 382 S.W.3d 266 (Tenn. 2012).

The facts of the case, as adduced by our supreme court, involved the June 18, 2005 murder of the victim, Robert Steely, a sixty-seven-year-old antique car dealer. *Id.* at 271. Knoxville Police Department officers discovered the body of the victim slumped over in the driver's seat of a restored red and white 1958 Buick in the parking lot of Townview Towers apartment complex. *Id.* His wallet was missing, and he had gunshot wounds in the chest. *Id.* He subsequently died at the hospital. *Id.* Police discovered a loaded .38 caliber revolver beneath the victim's left arm. *Id.* Two .22 caliber cartridge cases were located on the pavement near the Buick. *Id.* Police also found a .22 caliber bullet behind the passenger door panel of the Buick and a .38 caliber bullet that had been fired from the victim's gun lodged in a nearby vehicle. *Id.*

While there were no eyewitnesses to the shooting at the onset of the investigation, Investigator Steve Still of the Knoxville Police Department interviewed several individuals at the crime scene who had heard gunshots. *Id.* Fingerprints of Rebecca Ann Carpenter were found on the passenger side window frame of the vehicle and on a soda can. *Id.* Investigator Still received an anonymous tip that Amanda Harshaw, a resident in unit D218 at the apartment complex, had permitted a black male named "Travis," who had a missing front tooth, to use her telephone shortly after the shooting took place. *Id.* Ms. Harshaw confirmed that she had heard Travis say that he had shot someone in parking lot C who had a large sum of money in his possession. *Id.* at 271-72.

Several days following the shooting, Investigator Still received additional information from the same source that "Travis" had returned to Ms. Harshaw's apartment. *Id.* at 272. Several other officers were dispatched to the apartment, where Ms. Harshaw granted them permission to search. *Id.* Petitioner, who matched the description given by Ms. Harshaw, was discovered in the bathroom of the apartment. *Id.* Officers handcuffed petitioner, who identified himself as Travis Brabson,[1] and took him

---

[1] At trial, petitioner attempted to explain the discrepancy in his surname.

-2-

into custody. *Id.* Officers learned that there was an outstanding warrant for a "Travis Brabson" for failure to appear in court. *Id.* Petitioner was taken into custody. *Id.*

Investigator Still advised petitioner of his rights and interviewed him. *Id.* Petitioner acknowledged that he knew the victim had fired his weapon, and Investigator Still informed petitioner that his statement could make a difference between a possible life sentence and a less severe degree of punishment. *Id.* Petitioner subsequently admitted shooting the victim but claimed that he had done so in self-defense. *Id.*

At trial, the victim's daughter, Darlene Thomas, described the victim as a veteran and a hard-working, family man who cared for his disabled wife for several years prior to her death. *Id.* at 273. She testified that the victim bought and restored antique cars as a hobby. *Id.* She said he always carried a wallet and that he typically had $7,000 to $8,000 on his person. *Id.* He usually carried a handgun either in his pocket or concealed under the front seat of his car. *Id.* Ms. Thomas also stated that the victim had a girlfriend whom she had never met. *Id.*

George Hammontree testified that he was inside of his van, which was parked close to the victim's vehicle, on the date of the murder and that he heard someone yell, "Give it up[, g]ive it up." *Id.* He witnessed two black males and one white female standing next to the victim's car. *Id.* When one of the males, who had "dreadlocks," pointed a rifle at the victim, Mr. Hammontree crouched on the floor of his van and then heard "three small [shots] and then one big one." *Id.* Mr. Hammontree testified that based upon his self-proclaimed familiarity with weapons, the first three shots were fired from a .22 caliber automatic rifle and the final shot had come from a larger caliber gun. *Id.* When the incident was over, he saw the two males run down an embankment. *Id.* Mr. Hammontree explained that he did not give a statement to police officers when they arrived because he was afraid. *Id.* One or two weeks later, Mr. Hammontree contacted Investigator Still and identified petitioner as the individual who had shot the victim. *Id.* at 274. At trial, Mr. Hammontree again identified petitioner. *Id.*

Rebecca Ann Carpenter testified that she occasionally worked as a prostitute and admitted to having a drug problem. *Id.* She stated that on the day of the shooting, in a different area from where the victim was killed, she approached the victim because he had motioned for her to come to his car. *Id.* She spoke to the victim and asked for a ride in his classic car. *Id.* According to Ms. Carpenter, the victim offered to take her to his residence for drinks. When she asked for marijuana, the victim drove her to Townview Towers and removed eighteen dollars from his wallet; she observed that the wallet contained a large sum of money. *Id.* Upon arriving at the apartment complex, Ms. Carpenter saw petitioner and recognized him as the person who had sold her crack cocaine earlier that day. *Id.* When she returned to the victim's car to ask for more money, she saw the petitioner point a long-barreled weapon at the victim. *Id.* Ms.

Carpenter did not hear any words between the two men. *Id.* When she heard the first gunshot, she "hit the ground," and when the firing ceased after four or five additional shots, she reached through the victim's open car window, retrieved her purse from the passenger seat, and fled the scene. *Id.* She claimed that the victim's wallet was still in his back pocket when she ran. *Id.* She did not recall any other person aside from petitioner being near the scene of the shooting. *Id.* Several weeks later, Ms. Carpenter gave a statement to Investigator Still and identified petitioner from a photographic lineup. *Id.* at 274-75. She was, however, unable to identify him at trial, allegedly because of poor eyesight. *Id.* at 275.

James Blackwell, a federal inmate incarcerated for cocaine distribution, testified that petitioner had informed him that he was facing twenty-five years to life for shooting and killing a man in self-defense. *Id.* According to Blackwell, petitioner confided that during a drug sale involving the victim and petitioner's cousin, petitioner observed that the victim had a large amount of money in his possession. *Id.* Accordingly, petitioner armed himself with a weapon and subsequently robbed the victim of almost $10,000. *Id.* Petitioner told Mr. Blackwell that he shot the victim because the victim shot at him first. *Id.*

Petitioner testified that on the date of the shooting, he was selling drugs at Townview Towers when he saw a red and white car driven by the victim, who was white, in which a white female was a passenger. *Id.* He explained, "Not too many white people just pull into [Townview Towers] unless they was [sic] looking for crack cocaine." *Id.* Petitioner approached the female and asked for a cigarette, but she ignored him and walked away. *Id.* He said that when he asked the victim if he could have a cigarette, the victim "freaked out," reached under his seat for a gun, and fired a shot at the fleeing petitioner. *Id.* Petitioner admitted that he then removed his own gun from his back pocket and fired three or four shots in the direction of the victim because he feared the victim would fire additional shots at him. *Id.* He denied robbing the victim and testified that after the shooting, he drove to a quarry and threw the pistol into the water. *Id.* He also denied speaking to Mr. Blackwell because federal prisoners at the penal farm were known to cooperate with the police. *Id.*

Upon this evidence, the jury convicted petitioner of felony murder committed during the perpetration of a robbery, and the trial court imposed a sentence of life in prison. Following his unsuccessful direct appeal, petitioner filed a petition for post-conviction relief and, with the assistance of appointed counsel, two subsequent amendments thereto. The post-conviction court held an evidentiary hearing on the petitions.

B. Post-Conviction Hearing

At the post-conviction evidentiary hearing, the only witness petitioner called was his trial counsel, who had practiced law since 1976 as both a prosecutor and a defense attorney and had taught constitutional criminal law and pretrial criminal motions classes at the University of Tennessee Law School.[2] Trial counsel received discovery and retained an investigator to assist in the preparation of petitioner's case. The State provided trial counsel with the names of all the witnesses it intended to call at trial.

Trial counsel said that although the State portrayed the victim as a "nice guy," he was known in the neighborhood for picking up prostitutes in an antique car, purchasing cocaine for their consumption, and sometimes using it with them. Trial counsel clarified that he made a mistake when he attempted to cross-examine the victim's daughter, Ms. Thomas, about the victim's criminal record. It was, in fact, the victim's son who had the criminal record. He explained that the State developed testimony about the victim's "good character" prior to his attempted attack on the victim's character. He said, "[T]his was a case that depended strictly on the credibility of witnesses." Post-conviction counsel asked trial counsel whether "the good character evidence that the State put on before his character was ever placed at issue[] could have impacted the jury's determination of whether he was the type of individual who would have pulled his weapon and shot at somebody for asking for a cigarette[.]" Trial counsel countered that "this was a case where [the victim] was in a neighborhood where the only people that came to this parking lot were there for three reasons"— either they lived there, they were visiting someone who lived there, or they were engaging in criminal activity such as picking up prostitutes or dealing in drugs. He opined that the character of a victim is always a matter of concern with the jury in a case such as this and in that regard, the State's presentation of favorable character evidence could have affected the deliberations and determination of guilt.

On cross-examination, trial counsel equivocated and said that "you never know what affects the jury's verdict." He conceded that Ms. Carpenter provided evidence of the victim's "bad" character in that the victim not only picked up a prostitute but that he also took her back to his residence where she used cocaine. He acknowledged that "extensive" drug paraphernalia was located within the victim's residence. However, he surmised that "what the jury hears first is oftentimes what they believe."

With regard to the private investigator retained by the defense, trial counsel stated that Mr. Cohan interviewed witnesses who were willing to discuss the case, arranged trial

---

[2] Although trial counsel testified about several issues surrounding the trial and his preparation, we are limiting our recitation of the facts to those that are pertinent to our determination of the issues presented in this appeal.

notebooks, and identified credibility issues of potential witnesses. Trial counsel expected to have Mr. Cohan available at trial to assist him. Mr. Cohan had been involved in the case longer than trial counsel, so trial counsel deemed his assistance to be "very important." He thought Mr. Cohan was an "integral" and "essential" part of the defense. He would have consulted with Mr. Cohan at the conclusion of questioning a witness to make sure that he had covered everything. Trial counsel said that Mr. Cohan had a great deal of experience with criminal cases and that he was very experienced with the inner workings of the Knoxville Police Department. When asked how Mr. Cohan's absence from the courtroom affected his presentation of the case, trial counsel responded, "It limited that second set of ears to listen to the police and to know the procedures that he had intimate knowledge of from his prior experience." When asked about the degree of impact Mr. Cohan's exclusion had on the case, trial counsel posited, "[I]t's hard exactly to say that, because there is always going to be an impact when you rely . . . on having someone else there to assist you." He affirmed that he believed Mr. Cohan's absence had an impact on the case.

On cross-examination, trial counsel opined that it would have been useful to have Mr. Cohan assisting him "just as [the State had] a police investigator sitting beside [him] at trial." He said that although Ms. Carpenter testified inconsistently with her recorded statement, the defense made the initial decision that "it was more important . . . to have Mr. Cohan . . . in the courtroom than to use him to possibly impeach witnesses" from whom he had taken statements.

## II. Analysis

Appealing the denial of post-conviction relief, petitioner raises the following issues: (1) whether trial counsel was ineffective for failure to contemporaneously object to the introduction of character evidence pertaining to the victim; (2) whether the State violated the tenets of *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding a statement given by James Blackwell; (3) whether the trial court erred by precluding trial counsel from questioning Investigator Still with regard to the polygraph results of Patricia Hickman; and (4) whether the trial court erred by sequestering petitioner's private investigator.

## A. Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann.

§ 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the post-conviction court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the post-conviction judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence . . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must

consccientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

### B. Issues

#### 1. Trial Counsel's Failure to Contemporaneously Object to the Introduction of Character Evidence of the Victim

Petitioner argues that the State committed error by eliciting testimony concerning the victim's character from his daughter and that trial counsel was ineffective for failing to lodge a contemporaneous objection at trial, thereby resulting in waiver of the issue on appeal.

In denying relief, the post-conviction court stated that it allowed character evidence of the victim "to, in some small measure, personalize or humanize the victim." It stated that it permitted the same from defense attorneys with regard to criminal defendants, as well. It said, "[W]hen the objection came, I direct[ed] counsel to move on[,] and he did so."

This court's opinion from the direct appeal indicated that the victim's daughter testified that the victim had been a veteran of the United States Army and that he and his wife had four children. *Travis Kinte Echols*, 2011 WL 2418737, at *17. Ms. Thomas testified that when her mother, the victim's wife, became paralyzed in 1982, the victim cared for her and their children. *Id.* He continued to care for his wife until 2000, when he was no longer able to do so and placed his wife in a nursing home. *Id.* Trial counsel objected when the State asked Ms. Thomas about the victim's "relationship" with the

1958 Buick. *Id.* The trial court ruled that the State could "personalize the victim to some extent" but that the State should "wrap it up." *Id.* The State immediately ceased the objectionable line of questioning. *Id.* On appeal, this court noted the State's concession that the character evidence was improper but found that petitioner waived the issue by failing to contemporaneously object at trial. *Id.*

At the evidentiary hearing, trial counsel testified that he objected to the testimony when it became "extensive." He, in fact, raised an objection to the testimony, though not at the beginning of it. We conclude that this was a reasonable tactical decision. To assert that trial counsel should have objected sooner requires this court to engage in hindsight, which we will not do. Moreover, we cannot say that petitioner was prejudiced by trial counsel's delayed objection. While the jury heard the victim's daughter testify to her father's attributes, it also heard that the victim frequently picked up prostitutes and bought drugs for them. Ms. Carpenter testified that this scenario occurred on the day of the victim's murder. We cannot say that exclusion of Ms. Thomas's testimony concerning the victim would have resulted in a different result for petitioner.

Petitioner briefly mentioned trial counsel's failed attempt to impeach Ms. Thomas with false information about the victim's criminal record, which was nonexistent. Given the evidence presented at trial, we cannot conclude that this factor contributed to the verdict or that a different result would have been reached had he not done so. Petitioner is not entitled to relief.

### 2. *Brady* Violation Regarding the Statement of James Blackwell

Petitioner concedes that this issue was raised and addressed on direct appeal and thus has been previously determined. When a claim has been previously determined, it cannot form the basis for post-conviction relief. *Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) (citing *Harris v. State*, 947 S.W.2d 156, 174-75 (Tenn. Crim. App. 1996)). "A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing." Tenn. Code Ann. § 40-30-106(h). "A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence." *Id.* Accordingly, this issue is beyond the scope of permissible post-conviction review.

### 3. Improper Restriction on Trial Counsel's Questioning of Investigator Still about Patricia Hickman's Polygraph Results

Petitioner concedes that this issue was raised and addressed on direct appeal and thus has been previously determined. For the reasons stated above, this issue is beyond the scope of permissible post-conviction review.

## 4. Improper Sequestration of Petitioner's Private Investigator

As the State noted, petitioner framed this issue in terms of ineffective assistance of counsel in his petition for post-conviction relief. He appears to have abandoned this argument on appeal, asserting instead that the merits of this issue were not "fully addressed on direct appeal" and that this court should review this issue "in light of the evidentiary explanation" given by trial counsel at the post-conviction hearing.

With regard to this issue, in denying relief, the post-conviction court ruled that the State had a "legitimate concern that Mr. Cohan might have to testify." Accordingly, out of an abundance of caution, the court removed Mr. Cohan from the courtroom. The court stated that it imposed the rule of sequestration of witnesses and "stood by" that decision.

We perceive several flaws in petitioner's approach. First, this issue was, indeed, previously determined by this court on direct appeal. *See Travis Kinte Echols*, 2011 WL 2418737, at *28-29 (noting that although a defense investigator may qualify as "essential" under Rule 615[3] of the Tennessee Rules of Evidence, the trial court did not address whether the investigator was essential to the presentation of petitioner's case, and trial counsel failed to explain "how not having his investigator in the courtroom affected his trial preparation or cross-examination of witnesses or provide[] any examples of prejudice"). Second, we cannot revisit a previously determined issue during post-conviction proceedings simply because the position taken at trial has been buttressed by additional testimony unless, of course, such testimony rises to the level of newly discovered evidence, which has not been established on the facts before us. Third, a petitioner cannot change his approach on appeal simply because it was ineffective in the post-conviction court. To do so results in waiver of the issue because the basis for the claim argued on appeal was not presented in the post-conviction court. *See State v. Aguilar*, 437 S.W.3d 889, 899 (Tenn. Crim. App. 2013) (affirming that when appellant did not present a claim in the trial court, the claim is waived); *see also State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996) ("Issues raised for the first time on appeal are considered waived.").

However, to the extent that petitioner is persisting in his position that sequestration of his investigator at trial resulted in *de facto* denial of the effective assistance of counsel ("sequestration of Investigator Cohan definitely impacted [trial counsel's] ability to represent petitioner effectively at trial"), we will review this issue using the standard set

---

[3] Rule 615 of the Tennessee Rules of Evidence provides, in pertinent part, that "[a]t the request of a party[,] the court shall order witnesses, including rebuttal witnesses, excluded at trial . . . . This rule does not authorize exclusion of . . . a person whose presence is shown by a party to be essential to the presentation of the party's cause."

forth *supra*. At the evidentiary hearing, trial counsel stated that he expected to have immediate access to his investigator, that the investigator had performed extensive work prior to trial counsel's involvement in the case, that Mr. Cohan had personally interviewed several witnesses, that he was familiar with the investigative procedures utilized by the Knoxville Police Department, that he was "essential" and "integral" to the defense, and that Mr. Cohan was a "second set of ears" at trial. However, trial counsel did not specify how Mr. Cohan's absence from the courtroom implicated any of these areas. Notably, he did not testify that being denied immediate access to Mr. Cohan for a time during the proceedings disadvantaged him in any particular, concrete way. Absent some objective criteria upon which to assess prejudice, we find none. Moreover, given trial counsel's inability to articulate even one way in which Mr. Cohan's absence negatively impacted his presentation of petitioner's defense, we cannot say that his failure to enunciate such a reason when arguing in the trial court constituted deficient performance. Petitioner is without relief.

## CONCLUSION

Based upon our review of the briefs, the applicable legal authority, and the record as a whole, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE